# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| AMY NYMAN, | Case No. 3:20-cv-02256 |
| Plaintiff, | |
| v. | JUDGE JEFFREY J. HELMICK |
| U.S. CENTER FOR SAFESPORT, a Colorado Non-Profit Corporation, et al., | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO VACATE AND REMAND ARBITRATION AWARD** |
| Defendants. | |

After an exhaustive investigation process, the U.S. Center for SafeSport ("SafeSport") determined that, for more than a decade, Plaintiff Amy Nyman, a USA Gymnastics ("USAG") coach, engaged in physical and emotional abuse of multiple athletes whom she coached. SafeSport issued sanctions including suspension from the Olympic and Paralympic Communities for a period of six months, probation for two-years, requiring that she take additional SafeSport training, and implementing a no-contact order for the athletes whom she abused.  In addition, SafeSport separately determined that Ms. Nyman retaliated against two witnesses and sanctioned Ms. Nyman to a twelve-month suspension for this misconduct.

Pursuant to the SafeSport Code, Ms. Nyman requested a hearing on SafeSport's decision. After extensive briefing, a neutral Arbitrator held a two-day *de novo* evidentiary hearing during which SafeSport called ten witnesses and Ms. Nyman called ten witnesses.  In a 25-page Hearing Decision, the Arbitrator determined that Ms. Nyman had engaged in physical and emotional misconduct with numerous minor athletes over the course of more than a dozen years.  The

1

Arbitrator found, however, that SafeSport had not proven by a preponderance of the evidence that Ms. Nyman retaliated against witnesses.

Based upon findings of misconduct by Ms. Nyman, the independent Arbitrator ordered the following sanctions: (1) a twelve month suspension; (2) three-years' probation; (3) twenty hours of community service; (4) monthly sport psychology sessions; (5) SafeSport training; and, (6) an order that Ms. Nyman not contact any of the Claimants.  Compared to the initial sanctions imposed by SafeSport, the Arbitrator increased the suspension from six months to twelve months and the probation from two years to three.  He also added community service and sports psychology counseling.

Through her *Motion to Vacate and Remand Arbitration Award* ("*Motion to Vacate*"), Plaintiff claims that by increasing the sanctions imposed by SafeSport and adding two additional sanctions, the neutral Arbitrator "exceeded his powers" in violation of 9 U.S.C.A. § 10(a)(4), which provides that a court may vacate an arbitration decision if, "the arbitrators exceeded their powers…."  Because SafeSport arbitrations are *de novo* hearings and the Code expressly permits the Arbitrator to determine the appropriate remedy, the Arbitrator was well within his powers to issue the above sanctions.  Accordingly, Plaintiff's *Motion to Vacate* should be denied.

## LEGAL STANDARD

"[T]he statutory authority of courts to vacate an arbitrator's award is extremely limited." *Cedar Fair, L.P. v. Falfas*, 19 N.E.3d 893, 895 (Ohio 2014).  "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."  *United Paperworkers Intl. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 371 (1987). "Generally, if the arbitrator's award is based on the language and requirements of the agreement,

the arbitrator has not exceeded his powers." *Northwest State Community College v. Northwest State Community College Edn. Assn. OEA/NEA*, 79 N.E.3d 1127, 1134 (Ohio Ct. App 2016) (*citing Bd. of Trustees of Miami Twp. v. Fraternal Order of Police*, 690 N.E.2d 1262 (Ohio 1998)).

"Arbitrators act within their authority to craft an award so long as the award 'draws its essence' from the contract—that is, 'when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful.'" *Cedar Fair*, 19 N.E.3d at 895-96 (*quoting Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 488 N.E.2d 872 (Ohio 1986)). Stated differently, "[a]n arbitrator's award draws its essence from an agreement when (1) the award does not conflict with the express terms of the agreement and (2) the award has rational support or can be rationally derived from the terms of the agreement." *Piqua v. Fraternal Order of Police*, 924 N.E.2d 876, 886 (Ohio Ct. App. 2009). "Once it is determined that the arbitrator's award draws its essence from the [agreement] and is not unlawful, arbitrary, or capricious, a reviewing court's inquiry for purposes of vacating an arbitrator's award … is at an end." *Adams Cty./Ohio Valley Local Sch. v. OAPSE/AFSCME*, 94 N.E.3d 937, 943 (Ohio Ct. App. 2017) (quoting *Bd. of Edn. of the Findlay City School Dist. v. Findlay Education Assn. et al.*, 551 N.E.2d 186 (Ohio 1990)).

## ARGUMENT

## I. SAFESPORT HAS BEEN DESIGNATED AS THE INDEPENDENT ENTITY TO ADDRESS ABUSE IN THE OLYMPIC MOVEMENT AND MAKE ELIGIBILITY DETERMINATIONS AND DOES SO THROUGH ITS CODE.

The Olympic and Paralympic Movement is made up of approximately 50 private associations primarily known as National Governing Bodies ("NGBs"). There are estimated to

be 14-18 million members of these NGBs, including athletes, coaches, and staff.  Ms. Nyman was a member of one such NGB, USA Gymnastics.

To address physical, emotional, and sexual abuse in the Movement, the United States Olympic and Paralympic Committee created the U.S. Center for SafeSport ("SafeSport").  On February 14, 2018, Congress affirmed SafeSport's mission when it enacted the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act, Pub. L. No. 126, 115th Cong., 2d Sess., 132 Stat. 318 (Feb. 14, 2018), which amended the Ted Stevens Olympic and Amateur Sports Act, codified as amended at 36 U.S.C. ch. 2205.  Congress stated SafeSport "shall serve as the independent national safe sport organization and be recognized worldwide as the independent national safe sport organization for the United States." 36 U.S.C. §220541(a)(1).  SafeSport's express mandate is to protect those participating in the Olympic movement from abuse, including physical and emotional abuse. *Id.* at (a)(2) (SafeSport shall "exercise jurisdiction over the [USOPC], each national governing body, and each paralympic sports organization with regard to safeguarding amateur athletes against abuse, including emotional, physical, and sexual abuse, in sports….").

SafeSport must "maintain an office for response and resolution that shall establish mechanisms that allow for the reporting, investigation, and resolution…of alleged sexual abuse in violation of SafeSport's policies and procedures…." *Id.* at (a)(4).  Congress recognized SafeSport's power to determine the eligibility status of participants in the Olympic movement. *Id.* at (c)(1) (SafeSport shall "develop policies and procedures to resolve allegations of sexual abuse within its jurisdiction to determine the opportunity of any amateur athlete, coach, trainer, manager, administrator, or official, who is the subject of such an allegation, to participate in

4

amateur athletic competition."). The procedures must provide "fair notice and an opportunity to be heard…." *Id.* at (a)(5).

In furtherance of this mission, SafeSport created the SafeSport Code ("Code"). Dkt. 4-1, Ex. 3 to *Motion to Vacate*. The Code sets forth the standards of conduct for athletes and coaches who voluntarily choose to be associated with the United States Olympic and Paralympic Movement. The Code also prescribes the processes and procedures through which alleged violations of the Code are investigated, reviewed, and resolved, including the opportunity for a *de novo* arbitration of SafeSport's decisions. Regarding arbitrations in particular, the Code provides as follows:

> These Rules shall apply to arbitrations arising out of the Code. No other arbitration rules shall be applicable. Each Participant, by virtue of membership, affiliation, or participation or other activity making them subject to the jurisdiction of the Center, agrees to abide by and be subject to these Arbitration Rules as the sole and exclusive method of resolving any challenge to the Center's eligibility decision(s) or the Center's processes.

Dkt. 4-1 at 30, Rule-1, Ex. 3 to *Motion to Vacate*.

Pursuant to these rules, arbitrations under the Code are administered through an independent arbitration organization – JAMS. *Id.* at 46. The arbitrator is granted broad discretion to determine, in the first instance: (1) whether there is a Code violation; and (2) if so, the appropriate sanction. *Id.* at 31, Rule-2. The arbitral hearing is *de novo* with no deference given to SafeSport's investigation or Decision – including SafeSport's sanction. *Id.* at 36, Rule-25 ("The Center's Decision and Investigative Report with appendices shall be admitted into evidence and the arbitrator shall give them appropriate weight."). SafeSport has the burden of proving a Code violation by a preponderance of the evidence. *Id.* at 36, Rule-24. The arbitrator is empowered to "grant such remedy or relief the arbitrator deems just and equitable and within the scope of the Code and the Sanctioning Guidelines." *Id.* at 40, Rule-32(c). Moreover, the

arbitrator is empowered to "interpret and apply th[e] Rules insofar as they relate to the arbitrator's powers and duties." *Id.* at 42, Rule-39. Both Parties agreed that any decision rendered in the arbitration is final and binding. *Id.* at 41, Rule-34 ("The arbitration decision shall be considered final and binding. The parties waive, to the fullest extent permissible by law, any right to challenge in court the arbitrator's decision.").

## II. BOTH SAFESPORT AND THE INDEPENDENT ARBITRATOR DETERMINED THAT PLAINTIFF ENGAGED IN PHYSICAL AND EMOTIONAL MISCONDUCT WITH MINOR ATHLETES.

On March 20, 2019, SafeSport received a report that Plaintiff, Amy Nyman, had engaged in physical and emotional misconduct with a number of minor athletes whom she coached. SafeSport initiated an investigation into the matter. During the investigation, SafeSport interviewed more than forty witnesses, including Ms. Nyman. The investigation culminated in a 600-page investigation report, finding that, among other things, Ms. Nyman had engaged in physical and emotional misconduct of young gymnasts.

On April 3, 2020, SafeSport issued its Notice of Decision, determining that Ms. Nyman violated the SafeSport Code by engaging in physical and emotional misconduct against multiple minor athletes in violation of the SafeSport Code. *See* Dkt. 9-1, at 3-4, Ex. 2 to *Motion to Vacate*. Pursuant to the Code, SafeSport issued sanctions: (1) suspending Ms. Nyman for a period of six months, (2) placing her on probation for a period of two years after her suspension, (3) requiring additional SafeSport training, and (4) instituting a no-contact order. *Id.* at 12-13. Separately, SafeSport determined that Ms. Nyman retaliated against two witnesses during the investigation process. SafeSport sanctioned Ms. Nyman with a 12-month suspension for the retaliatory acts. *Id.* As permitted under the SafeSport Code, Plaintiff requested an arbitration hearing on SafeSport's findings and sanctions. *Id.* at 1.

On April 16, 2020, JAMS appointed an arbitrator to this matter.  *Id.*  Plaintiff did not object to, and expressly consented to, the Arbitrator and the arbitrability of the matter.  *Id.* ("The Parties confirmed they have no objection to the undersigned serving as the arbitrator or proceeding in arbitration. Neither Party raised an objection at the time of or during the hearing.").  The Parties submitted pre-hearing briefing, and the arbitration was held on June 29 and 30, 2020.  *Id.* at 1.  Plaintiff was represented by counsel throughout the matter, including the arbitration.  *Id.*  SafeSport called ten witnesses to testify, including numerous claimants. *Id.* at 2-3.  Plaintiff also presented ten witnesses, including testifying on her own behalf.  *Id.* at 3.  Both sides presented documentary evidence. *Id.*

At the close of the two-day hearing, Plaintiff expressly affirmed she was presented with a full and fair opportunity to present her case.  *Id.* at 1 ("At the conclusion of the hearing, the Parties confirmed they were provided a full and fair opportunity to submit and argue necessary facts, allegations, legal arguments, evidence, and present all witnesses they deemed appropriate. Neither Party nor counsel has filed an objection or indicated additional time was necessary to fully and fairly present this matter for consideration.").  The Arbitrator requested additional information after the hearing, and the evidentiary record was closed on July 6, 2020.  *Id.* at 2.

On July 8, 2020, the Arbitrator issued his Hearing Decision.  *Id.*  In a 25-page, thorough and well-reasoned decision, the arbitrator determined SafeSport had established a Code violation regarding Plaintiff's physical and emotional misconduct as to multiple minors, spanning more than a decade.  The Arbitrator determined that SafeSport had not proven retaliation by a preponderance of the evidence.  *Id.* at 22.  After a thorough review of the evidence and the Sanctioning Guidelines set forth in the Code, the Arbitrator imposed the following sanctions: (1) twelve-month suspension; (2) three-year probation; (3) SafeSport training; (4) no-contact order;

(5) twenty hours of community service at a non-profit organization; and, (6) monthly meetings with a sports psychologist "focused on how to positively communicate and convey information to athletes." *Id.* at 22-25.

In her *Motion to Vacate*, Plaintiff does not challenge any of the underlying findings of misconduct. Her sole contention is that the Arbitrator did not have the power to increase her suspension from six months to twelve, her probation from two years to three, require community service, and require meetings with a sports psychologist to better learn how to communicate with athletes.

## III. THE ARBITRATOR ACTED WELL WITHIN THE SCOPE OF HIS AUTHORITY AND THE SAFESPORT CODE IN DETERMINING THE APPROPRIATE SANCTIONS FOR PLAINTIFF'S MISCONDUCT.

Plaintiff asserts that the Arbitrator's sanctioning decisions were *ultra vires* because: (1) he did not have the power to increase the initial SafeSport sanctions (suspension and probation); and, (2) he did not have the power to order additional sanctions (such as the community service and professional counseling). Plaintiff's position that the arbitrator could have reduced the sanction demonstrates that the arbitrator necessarily has the authority to choose the appropriate sanctions based upon his *de novo* review. Plaintiff provides no authority for her position that the ceiling for permissible sanctions is somehow set by the initial SafeSport decision, which would effectively rewrite the Code and tie the arbitrator's hands. Plaintiff's position is unsupported and simply incorrect.

### A. Under the SafeSport Code, Arbitrations Are *De Novo*, Providing the Arbitrator With Broad Discretion Regarding Outcomes and Sanctions.

Although Plaintiff claims she "appealed" SafeSport's decision, SafeSport arbitration hearings are not an "appeal" or review of the SafeSport decisions. They are *de novo* hearings. *See Salim v. U.S. Center for SafeSport*, Case No. 8:19-cv-00126-JVS-DFM (C.D. Cal. April 15,

2019), Order Regarding Plaintiff's Motion to Vacate and Remand Arbitration ("The Code also prescribes processes and procedures through which alleged violations of the Code are investigated and resolved, including *de novo*, arbitration of SafeSport's decisions") (attached hereto as Exhibit A). The arbitrator is empowered, in the first instance, to determine whether there was a violation of the Code **and the appropriate sanctions**. *See* Dkt. 4-1, Ex. 3 to *Motion to Vacate* at 31, Rule-2 ("Scope: [The] Arbitration shall resolve whether a Respondent violated the Code and the appropriate sanction."). The Arbitrator's authority to determine the appropriate sanction is further emphasized in the Code, which states, "The arbitrator may grant such remedy or relief the arbitrator deems just and equitable and within the scope of the Code and the Sanctioning Guidelines." *Id.* at 40, Rule-32(c).

To be clear, nowhere does the Code state the arbitrator must impose a sanction equal to or lesser than the initial SafeSport Decision. Nor does Plaintiff identify any provision under the Code that would require this illogical result. Instead, the arbitration agreement - the SafeSport Code - expressly authorizes *and* requires that an arbitrator determine the appropriate sanction(s) *de novo*. Notably, Plaintiff's Motion never addresses or even acknowledges the *de novo* standard. Here, the arbitrator appropriately performed a *de novo* review and determined the appropriate sanctions. The law is clear that a court should not second-guess an arbitrator's choice of remedy absent some showing of fraud or corruption. *See Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, Int'l Assoc. of Machinists and Aerospace Workers*, 886 F.2d 1200, 1208 (Ninth Cir. Ct. App. 1989) ("The [Supreme] Court was equally categorical in its treatment of judicial second-guessing of the remedy formulated by an arbitrator, stressing the arbitrator's 'need ... for flexibility in meeting a wide variety of situations' and the deference to be afforded the arbitrator's use of 'his informed judgment ... to reach a fair solution

of a problem.'" (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960)).  Here, Plaintiff does not even attempt to make such a showing.  Further, it is clear from the extensive process provided to Plaintiff that the Arbitrator made an informed, reasoned decision.

The Hearing Decision, on its face, demonstrates the Arbitrator thoroughly examined all the evidence in reaching his decision.  The evidentiary hearing itself took place over two lengthy days, where Plaintiff was represented by counsel and called numerous witnesses.  The fulsome process provided to Plaintiff supports the conclusion the Arbitrator weighed all relevant factors and evidence in reaching his decision.  The fact that the Arbitrator determined that SafeSport did *not* prove a violation regarding Plaintiff's retaliation as to witnesses demonstrates the Arbitrator performed a critical, *de novo* review of all the evidence.  Moreover, "since there is … no requirement (or even a reasonable expectation) that an arbitrator write an exhaustive 'opinion,' a court often has no principled ground upon which to question an arbitrator's *ratio decidendi*." *Stead Motors*, 886 F.2d at 1207.

The Arbitrator's decision to increase Ms. Nyman's sanctions was based upon a full and fair process, grounded in the Code, and well-reasoned.  The *Motion to Vacate* should be denied.

**B.    Based Upon His *De Novo* Review, The Arbitrator Determined the Appropriate Sanctions, Which Squarely Fit Within Those Recognized by The SafeSport Code.**

Relying primarily upon *Cedar Fair, L.P. v. Falfas*, 19 N.E.3d 893 (Ohio 2014), Plaintiff erroneously argues that an arbitrator cannot impose a remedy that is not within the scope of the arbitration agreement.  In that case, the court merely stated the non-controversial rule that specific performance is not an accepted remedy in Ohio for breach of an employment contract and could not, therefore, be an appropriate remedy absent express provision in the arbitration

10

agreement.  *Id.* at 453 ("In short, unless a statute or the employment contract says otherwise, the rule in Ohio remains that specific performance is not an available remedy for breach of an employment contract.").  In contrast here, the Arbitrator's choice of remedies falls squarely within those enumerated in the SafeSport Code.

As noted, the Code expressly permits an arbitrator to "grant such remedy or relief the arbitrator deems just and equitable and within the scope of the Code and the Sanctioning Guidelines."  *See* Dkt. 4-1, Ex. 3 to *Motion to Vacate* at 40, Rule-32(c).  Hence, the *only* limitation, if any, on an arbitrator's choice of remedy is that it must fit "within the scope of the Code and Sanctioning Guidelines."  *Id.*  The Sanctioning Guidelines are set forth on pages 29 and 30 of the Code.  *Id.* at 29 ("One or more of the following sanctions may be imposed singularly or in combination….").  The Sanctioning Guidelines appropriately recognize that sanctions should be crafted to meet the specific needs of a specific case.  The Code provides as follows:

> *Other discretionary sanctions.*  [SafeSport] may, in its discretion, impose other sanctions for Prohibited Conduct, including, but not limited to, other loss of privileges, no contact directives, requirement to complete educational or other programs, or other restrictions or conditions as deemed necessary or appropriate.

*Id.* at 30.  Accordingly, the Arbitrator had the right to exercise his discretion to impose "other sanctions," including the "requirement to complete educational or other programs."  *Id.*  The sanctions related to community service and professional sports psychology counseling fall squarely within the Sanctioning Guidelines as additional educational or other programs.  As noted above, "[o]nce it is determined that the arbitrator's award draws its essence from the [agreement] and is not unlawful, arbitrary, or capricious, a reviewing court's inquiry for purposes of vacating an arbitrator's award … is at an end."  *Adams Cty./Ohio Valley Local Sch.* 94 N.E.3d at 943.  The *Motion to Vacate* should be denied.

11

## CONCLUSION

After reviewing extensive briefs and holding a two-day evidentiary hearing, an independent Arbitrator determined that Plaintiff engaged in emotional and physical misconduct spanning more than a decade. Based upon his *de novo* review, the independent Arbitrator determined the appropriate sanctions based on the Sanctioning Guidelines set forth in the Code. This Court should not second-guess the independent Arbitrator's choice of remedy, all of which fit squarely within the terms of the arbitration agreement, the SafeSport Code. SafeSport arbitrations are *de novo*, and there is no limitation preventing an arbitrator from increasing a sanction or fashioning programs or training as that arbitrator deems appropriate. Plaintiff's *Motion to Vacate* should be denied.

Dated: November 4, 2020                     Respectfully submitted,

                                            *s/ Joseph J. Zonies*
                                            Joseph J. Zonies (CO Atty. Bar No. 29539)
                                            ZONIES LAW LLC
                                            1700 Lincoln Street, Suite 2400
                                            Denver, CO  80203
                                            Phone: (720) 464-5300
                                            Fax: (720) 464-5357
                                            jzonies@zonieslaw.com

                                            Theresa A. Edwards (0090971)
                                            LEWIS BRISBOIS BISGAARD & SMITH
                                            LLP
                                            1375 E. 9th Street, Suite 2250
                                            Cleveland, OH 44114
                                            Phone: 216.344.9422 / Fax: 216.344.9421
                                            Tera.Edwards@lewisbrisbois.com

                                            *Counsel for Defendant U.S. Center for SafeSport*

## CERTIFICATE OF SERVICE

I certify a copy of the foregoing was filed electronically on November 4, 2020, via the Court's Electronic Filing Systems and notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*s/ Joseph J. Zonies*
Joseph J. Zonies

*Counsel for Defendant U.S. Center for SafeSport*
