UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Amy Nyman,                                         Case No. 3:20-cv-2256

           Plaintiff,

     v.                                               MEMORANDUM OPINION
                                                      AND ORDER

U.S. Center for SafeSport, *et al.*,

           Defendants.

## I.     INTRODUCTION AND BACKGROUND

Plaintiff Amy Nyman is a gymnastics coach, a member of USA Gymnastics, and the owner of New Heights Gymnastics, located in Wauseon and Maumee, Ohio. Defendant the U.S. Center for SafeSport ("SafeSport") is a non-profit corporation which is responsible for investigating allegations of misconduct involving individuals involved in Olympic sports in the United States. (Doc. No. 1 at 3). Members of USA Gymnastics are subject to the policies, procedures, and obligations set forth in the SafeSport Code for the U.S. Olympic and Paralympic Movement (the "SafeSport Code"). (Doc. No. 4-1 at 7).

In March 2019, SafeSport received a report that Nyman had engaged in the physical and emotional abuse of minor athletes at various times during her coaching career; Nyman subsequently was accused of retaliating against individuals who participated in the investigation into the initial report. (Doc. No. 4 at 6; Doc. No. 9 at 2). SafeSport concluded Nyman had violated USA Gymnastics policies and, in April 2020, issued findings and sanctions (Doc. No. 9 (the "Notice of

Decision")). SafeSport suspended Nyman for six months for violating USA Gymnastics policies concerning the treatment of athletes and, separately, twelve months for retaliation. (Doc. No. 4 at 6). Nyman's suspension was followed by a two-year term of probation. (*Id.*). The Notice of Decision also required Nyman to participate in certain SafeSport educational programs and to have no contact with the individual claimants. (*Id.*).

Nyman then requested arbitration, pursuant to the SafeSport Code. Christian Dennie, an arbitrator with Judicial Arbitration and Mediation Services, Inc. ("JAMS"), was appointed to preside over the arbitration proceedings. An arbitration hearing was held via video conference on June 29 and 30, 2020, during which Nyman and SafeSport presented evidence and argument. Nyman contended the allegations were false and, therefore, the sanctions SafeSport issued must be set aside. (Doc. No. 4 at 6-7). SafeSport argued its findings were supported by evidence and the sanctions should be upheld. (*Id.*).

Dennie issued his written decision on July 8, 2020 (the "Arbitration Award"). (Doc. No. 9-1). Dennie concluded some of the allegations and evidence against Nyman, including the retaliation allegations, did not constitute a violation of USA Gymnastics policies. (*Id.* at 18-22). Dennie imposed the following sanctions: a 12-month suspension followed by a 3-year term of probation, successful completion of an online SafeSport training program, 20 hours of community service, and monthly meetings with a sports psychologist. (*Id.* at 24-25). Nyman also was prohibited from having any contact with the individual claimants during the term of her suspension. (*Id.* at 25).

Nyman has filed a motion to vacate the Arbitration Award, arguing Dennie exceeded his authority under the SafeSport Code by increasing certain portions of the sanctions contained in the Notice of Decision and by adding additional sanctions beyond those set forth in the Notice of Decision. (Doc. No. 4). SafeSport, on behalf of itself and ten John Doe defendants, opposes

Nyman's motion to vacate. (Doc. No. 13). Nyman filed a brief in reply. (Doc. No. 15). For the reasons stated below, I deny Nyman's motion.

## II. ANALYSIS

Section 9 of the Federal Arbitration Act (the "FAA") requires a court to confirm an arbitration award unless the court vacates, modifies, or corrects the award "as prescribed" in sections 10 and 11 of the FAA. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (quoting 9 U.S.C. § 9). Section 10 lays out four circumstances in which a court may vacate an arbitration award, including "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). A party challenging an arbitration award "must clear a high hurdle. . . . 'It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (quoting *Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 509 (2001) (*per curiam*) (further citation omitted)).

The FAA makes arbitration agreements "as enforceable as other contracts, but not more so." *Taylor v. Ernst & Young, L.L.P.*, 958 N.E.2d 1203, 1210 (Ohio 2011) (quoting *Equal Emp't Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (further citation omitted)). Arbitration agreements are reviewed "according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)).

An arbitration award is enforceable "so long as it draws its essence from the [parties'] agreement." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). An award does not draw its essence from the parties' agreement if:

> (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally

3

supported by or derived from the agreement; or (4) it is based on "general considerations of fairness and equity" instead of the exact terms of the agreement.

*Beacon Journal Publ'g Co. v. Akron Newspaper Guild, Local No. 7*, 114 F.3d 596, 600 (6th Cir. 1997) (further citation omitted).

Nyman argues Dennie exceeded his authority by issuing sanctions outside of "the contours of the requests made to the arbitrator." (Doc. No. 15 at 2). She contends Dennie could only "(i) set aside the finding of a violation by SafeSport entirely (requested by Nyman); (ii) reduce the sanction imposed by SafeSport (requested by Nyman); or (iii) maintain the suspension imposed by SafeSport (requested by SafeSport)." (*Id.*). Nyman's arguments are not persuasive.

The SafeSport Code expressly states that "[a]rbitration <u>shall resolve</u> whether a Respondent violated the Code <u>and the appropriate sanction</u>." (Doc. No. 4-1 at 37) (emphasis added). Further, the SafeSport Code provides that an "arbitrator may grant such remedy or relief the arbitrator deems just and equitable and <u>within the scope of the Code and the Sanctioning Guidelines</u>." (Doc. No. 4-1 at 46) (emphasis added). When a respondent challenges SafeSport's finding of a violation and the sanction imposed, nothing in the SafeSport Code constrains an arbitrator's jurisdiction or authority by reference to the respondent's framing of the issues in the respondent's request for a hearing.[1]

Instead, the plain language of the SafeSport Code gives an arbitrator the authority to determine and impose a sanction within the universe of sanctions permitted by the SafeSport Code. The sanctions laid out in the SafeSport Code include written warnings, probation, suspensions, ineligibility, and permanent ineligibility, as well as "discretionary sanctions" such as "no contact

---

[1] If a respondent requests an arbitration hearing concerning SafeSport's sanctions only, or regarding a criminal charge, the "violation and the underlying facts [are] . . . deemed established and irrebuttable . . . [and t]he arbitrator will determine whether [SafeSport's] sanctions are appropriate given the facts and circumstances, as established." (Doc. No. 4-1 at 39-40). In this circumstance, the arbitrator may modify the sanction only if SafeSport abused its discretion in imposing a given sanction. (*Id.* at 40).

directives [and the] requirement to complete educational or other programs . . . ." (Doc. No. 4-1 at 35-36).

The SafeSport Code also identifies relevant factors to be used in determining the appropriate sanction, such as the respondent's prior history, any pattern of misconduct, the ages of the individuals involved, and the "[r]eal or perceived impact of the incident on the Claimant" and relevant organizations within the sporting community. (*Id.* at 36). Nyman has not identified any provision of the SafeSport Code which restricts the arbitrator's power to impose sanctions to a range limited at the upper end to the sanctions imposed by SafeSport in the Notice of Decision.

Nyman argues the Arbitration Award violates the "well settled [principle] . . . that an arbitrator cannot grant relief not requested by a party . . . ." (Doc. No. 4 at 12 (citing United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, art. 5, ¶ 1(c), June 10, 1958, 21 U.S.T. 2517)). The hurdle Nyman cannot clear, however, is that an arbitrator's powers are defined by the terms of the parties' agreement, *Solvay Pharmaceuticals, Inc. v. Duramed Pharmaceuticals, Inc.*, 442 F.3d 471, 476 (6th Cir. 2006), and the SafeSport Code expressly states that only the arbitration rules contained in that Code apply to an arbitration arising out of the SafeSport Code – "[n]o other arbitration rules shall be applicable." (Doc. No. 4-1 at 36). The SafeSport Code expressly permitted Dennie to determine "the appropriate sanction." (*Id.* at 37).

Nyman also disputes SafeSport's characterization of the scope of Dennie's review as "de novo." (See Doc. No. 15 at 2-5). In Nyman's view, "the entire concept of *de novo* review in the context of a first instance (as opposed to appeals) arbitration makes little sense, as *de novo* is a standard of review." (*Id.* at 5). While the SafeSport Code does not explicitly describe the arbitration process as one of *de novo* review, it clearly gives arbitrators the power to make independent determinations concerning allegations of misconduct and any attendant sanctions. (*See* Doc. No. 4-1 at 37, 46).

Moreover, the fact that the arbitration process is the second step in the SafeSport disciplinary process does not circumscribe the breadth of the arbitrator's powers. The first step in the SafeSport disciplinary process is an investigation and, if appropriate, the issuance of a notice of decision. (Doc. No. 4-1 at 28-36). A respondent like Nyman has ten days after the Notice of Decision is issued to request a hearing before an arbitrator. (*Id.* at 32). Arbitration is "the sole and exclusive method of resolving any challenge to [SafeSport's] eligibility decision(s) or . . . processes." (*Id.* at 37). There is no second-level arbitration appeal process; instead, the arbitrator's "decision shall be considered final and binding." (*Id.* at 47).

Nyman fails to show the Arbitration Award: conflicts with the express terms of the SafeSport Code; imposes additional, impermissible requirements; is not rationally supported by or derived from the SafeSport Code; or "is based on 'general considerations of fairness and equity' instead of the exact terms of the agreement." *Beacon Journal*, 114 F.3d at 600 (further citation omitted). Thus, she has not demonstrated Dennie exceeded his powers or that the Arbitration Award must be vacated. 9 U.S.C. § 10(a)(4).

### III. CONCLUSION

The Arbitration Award is consistent with the express terms of the SafeSport Code. Therefore, and for the reasons stated above, Nyman's motion to vacate, (Doc. No. 4), is denied. This case is dismissed.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge